APRIL S. GLATT (SBN 185708) [april@chauvellaw.com]
KENNETH M. WEINFIELD (SBN 116560) [ken@chauvellaw.com ]
**CHAUVEL & GLATT, LLP**
66 BOVET ROAD, SUITE 280
SAN MATEO, CALIFORNIA 94402
TELEPHONE: 650-573-9500
FACSIMILE: 650-573-9689

Attorneys for Plaintiff **Euro Space USA Inc.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EURO SPACE USA INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SP FAR EAST LIMITED, a Hong Kong corporation, and SPFE SCANDINAVIA INC., a Nevada corporation,<br><br>Defendants. | CASE NO. C 16-6595<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

For its Complaint against defendants SP Far East Limited and SPFE Scandinavia Inc., plaintiff Euro Space USA Inc. alleges as follows:

## JURISDICTION

1. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that it involves parties who are citizens of different states or nations and the amount in controversy exceeds $75,000.00, excluding interest and costs.

## PARTIES

2. Plaintiff Euro Space USA Inc. ("Euro Space") is a California corporation with its principal place of business in Union City, California.

3. On information and belief, defendant SP Far East Limited ("SP Far East") is a Hong Kong corporation with its principal place of business in Hong Kong, China.

4. On information and belief, defendant SPFE Scandinavia Inc. ("SPFE Scandinavia") is a Nevada corporation with its principal place of business in High Point, North Carolina. SPFE Scandinavia acts as SP Far East's representative with respect to its dealings in the U.S. .SP Far East and SPFE Scandinavia are collectively referred to herein as "defendants".

## VENUE AND INTRADISTRICT ASSIGNMENT

5. Venue is proper in this district under 28 U.S.C. §1391 in that a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this district, and because defendants are subject to personal jurisdiction in this district.

6. Pursuant to Civil L.R, Rule 3-2(a), assignment of this matter to the Oakland Division of this Court would be appropriate in that a substantial part of the events and omissions giving rise to the claims asserted herein occurred in Alameda County.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

7. On or about July 1, 2016, Euro Space and SP Far East entered into a Sales Agency Agreement (the "Agreement") which appointed Euro Space as the Exclusive Sales Agent for selling SP Far East's height-adjustable table products under its SPFE Scandinavia brand for a period of three years in North, Central and South America. The Agreement requires Euro Space to work with SPFE Scandinavia in carrying out the Agreement, establishing obligations of good faith and fair dealing between Euro Space and SPFE Scandinavia as well as with SP Far East. A true and correct copy of the Agreement is attached hereto as Exhibit A.

8. The Agreement's terms were negotiated by the parties in this judicial district. The Agreement, which contains a California choice of law provision, contemplates that a substantial part of Euro Space's performance thereunder would occur in California.

9. On or about November 2, 2016, after Euro Space had invested substantial time and effort in performing its obligations under the Agreement, SP Far East sent Euro Space a purported Notice of Termination of the Agreement stating as its sole ground that "it is not in its [SP Far East's] best interest to continue under the Sales Agency Agreement."

10. By its terms, there are only limited grounds on which the Agreement may be terminated, and the reason given by SP Far East in its November 2, 2016 letter is not among them.

11. On information and belief, defendants have begun contacting members of the furniture industry, including Euro Space business partners, in an effort to divert business to themselves which the Agreement allocates exclusively to Euro Space. Such communications and actions have undercut Euro Space's ability to perform its obligations under the Agreement, and harmed its reputation in the industry, including within this judicial district.

12. Euro Space has or will suffer damages of at least $2.5 million as a result of defendants' misconduct as set forth herein.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief)**

13. Plaintiff repeats the allegations contained in paragraph 1-12 of this Complaint by incorporation and reference to said allegations, as if they were set forth in full herein.

14. An actual controversy has arisen and now exists between Euro Space, on the one hand, and defendants on the other, with respect to Euro Space's status as a sales agent under the Agreement. Plaintiff desires a determination and declaration of the parties' respective rights and obligations thereunder.

15. A judicial declaration is necessary and appropriate at this time, under the circumstances, in order that Euro Space may ascertain its legal rights and duties in this regard. Euro Space will suffer financial and other burdens from further uncertainty as to its rights and duties under the Agreement.

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract)**

16. Plaintiff repeats the allegations contained in paragraphs 1 through 12 of this Complaint by incorporation of and reference to said allegations, as if they were set forth in full herein.

17. By purporting to terminate the Agreement without having proper grounds to do so, and in failing to cooperate with Euro Space in carrying out its terms, defendants have breached the Agreement as well as the covenant of good faith and fair dealing implied therein.

18. Euro Space has performed all of its obligations under the Agreement, except for those obligations that it is excused or prevented from performing due to a failure to perform thereunder by defendants, or either of them.

19. As a proximate result of the aforementioned breaches of the Agreement by defendants, or either of them, Euro Space has or will suffer actual loss or injury in an amount of at least $2.5 million, according to proof at trial, plus associated expenses, interest and costs.

20. Defendants have failed to compensate Euro Space for work it performed under the Agreement. Such failure constitutes a further breach of the Agreement, entitling Euro Space to recover additional damages according to proof at trial, plus associated expenses, interest and costs.

## THIRD CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage)

21. Plaintiff repeats the allegations contained in paragraphs 1 through 12 of this Complaint by incorporation of and reference to said allegations, as if they were set forth in full herein.

22. At all pertinent times hereto, defendants knew that Euro Space had or has actual or potential business relationships with third parties with the likelihood of providing an economic benefit to Euro Space.

23. On information and belief, defendants engaged in intentional acts designed to disrupt Euro Space's prospective economic advantage with those third parties. Such acts of interference included falsely informing the third parties about the reasons for the purported termination of the Agreement, and attempting to usurp the benefits of those relationships for themselves.

27. As a consequence of defendants' aforementioned acts, Euro Space's prospective economic advantage with these third parties have been disrupted, and may be further impaired if such actions by defendants continue. Defendants' conduct has been, and threatens to be, a substantial factor in causing the aforementioned harm.

28. Defendants' conduct was wrongful in that it involved acts of defamation and false or misleading representations.

29. As a proximate result of defendants' acts of interference, Euro Space has incurred and continues to incur general and special damages, in an amount to be proven at trial.

30. On information and belief, defendants are threatening to commit further acts of interference with Euro Space's prospective economic advantage, threatening irreparable harm to Euro Space's relationships with customers and potential customers. Euro Space's remedies at law are inadequate, and equitable relief is necessary to adequately protect it.

31. Defendants' conduct as alleged herein was egregious and carried out with willful and conscious disregard of Euro Space's rights and, hence, was oppressive and malicious. As a result, Euro Space is entitled to recover exemplary and punitive damages from defendants.

**FOURTH CLAIM FOR RELIEF**

**(Defamation)**

32. Plaintiff repeats the allegations contained in paragraph 1-12 of this Complaint by incorporation and reference to said allegations, as if they were set forth in full herein.

33. On information and belief, defendants made statements to third parties demeaning Euro Space, including with respect to the reasons for the purported termination of the Agreement, impugning Euro Space's credibility and reputation in the industry.

34. The aforementioned statements were false and defamatory in that they conveyed that Euro Space is an unreliable business partner.

35. Euro Space was harmed by the aforesaid statements in its business and professional reputation.

36. As a proximate result of defendants' defamatory acts, Euro Space has incurred, and will continue to incur, general and special damages in an amount to be proven at trial.

37. As a further proximate result of defendants' defamatory acts, Euro Space has suffered and will continue to suffer irreparable harm to its business interests and reputation. Euro Space's remedies at law are inadequate, and equitable relief is necessary to adequately protect it.

38. Defendants' defamatory acts were egregious and carried out with willful and conscious disregard of Euro Space's rights and, hence, were oppressive and malicious. As a result, Euro Space is entitled to recover exemplary and punitive damages from defendants.

**<u>FIFTH CLAIM FOR RELIEF</u>**

**(Quantum Meruit)**

39. Plaintiff repeats the allegations contained in paragraphs 1 through 12 of this Complaint by incorporation of and reference to said allegations, as if they were set forth in full herein.

40. Euro Space has rendered services to defendants, and in so doing invested substantial time and effort for which it has not been compensated. Defendants benefitted from such services but have not paid Euro Space therefor.

41. As a proximate result of defendants' actions, Euro Space is entitled to restitution of the reasonable value of the services provided, according to proof at trial, plus associated expenses, interest and costs.

**<u>SIXTH CLAIM FOR RELIEF</u>**

**(Accounting)**

42. Plaintiff repeats the allegations contained in paragraph 1-12 of this Complaint by incorporation and reference to said allegations, as if they were set forth in full herein.

43. Defendants have failed to pay Euro Space sales commissions due under the Agreement. On information and belief, defendants contend they are entitled to offset such amounts against sums otherwise due from Euro Space to defendants in a separate transaction. An accounting is necessary and proper to determine amounts due under the Agreement.

## SEVENTH CLAIM FOR RELIEF

**(Violation of the Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200, *et. seq.*)**

44. Plaintiff repeats the allegations contained in paragraph 1-12, 22-31 and 33-38 of this Complaint by incorporation and reference to said allegations, as if they were set forth in full herein.

45. The acts set forth above, including interference with prospective economic advantage, defamation and false or misleading representations, constitute unlawful business practices in violation of California Business and Professions Code § 17200 *et. seq.*

46. Euro Space has been irreparably damaged by such acts of unfair competition, and will continue to suffer irreparable injury to its business. Euro Space's remedies at law are inadequate, and equitable relief is necessary to adequately protect its rights.

47. Euro Space is, further, entitled to restitution of any and all gains, profits and advantages obtained by defendants as a result of such illicit acts.

## PRAYER FOR RELIEF

WHEREFORE, Euro Space prays for relief against defendants, and each of them, as follows:

1. Actual damages to be proven at trial, but no less than $2.5 million;
2. Restitution in an amount to be proven at trial;
3. An accounting of all amounts due to Euro Space under the Agreement
4. Pre- and post-judgment interest thereon;
5. Declaratory relief;
6. Temporary, preliminary and permanent injunctive relief;
7. Punitive damages in an amount to be determined at trial;

//

//

//

//

8. Out-of-pocket expenses and costs of suit; and

9. Such other and further relief as the Court deems just and proper.

Dated: November 14, 2016

**CHAUVEL & GLATT, LLP**

/s/

By:____________________________
Kenneth M. Weinfield
Attorneys for Plaintiff
Euro Space USA Inc.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of any issue herein triable of right by a jury.

Dated: November 14, 2016

**CHAUVEL & GLATT, LLP**

/s/

By:____________________________
Kenneth M. Weinfield
Attorneys for Plaintiff
Euro Space USA Inc.

# EXHIBIT A

# SALES AGENCY AGREEMENT

This Sales Agency Agreement ("Agreement") is made and effective from 1st of July 2016,

**BETWEEN:** **SP Far East Limited** (the "Principal"), a corporation organized and existing under the laws of Hong Kong of China, with its head office located at:

Room 303, 3/F, St. George's Building 2 Ice House Street, Central Hong Kong

**AND:** **Euro Space USA Inc. (ESU)** (the "Agent"), a corporation organized and existing under the laws of California of United States of America, with its head office located at:

30047 Ahern Ave, Union City, CA94587

NOW, THEREFORE, in consideration of the mutual agreements and covenants herein contained the parties hereto agree as follows:

**1. RECITALS**

a. Principal is a manufacturer of Frame Solutions and desires to appoint the Agent as the Exclusive Sales Agent for the sale of Principal's product in the following territory: The North, Central and South America, excluding Principal's Existing customers and any of their subsidiaries which includes Haworth and its subsidiaries, Krueger International Inc., ESI Ergonomic Solutions, Whalen, Cherryman and Jesper Office.

b. Agent desires to accept such appointment and to perform all the provisions of this agreement.

**2. DURATION**

The term of the agency created shall be 3 years, unless sooner terminated.

**3. Brand Management**

Agent and other related and owned company's by Mark Denham or/ and Lea G. Plummer are limited to sell only Principal's frame solutions Under SPFE Scandinavia Inc.'s Brand Name, which means Agent will wear SPFE Uniform, use SPFE titles, SPFE Name Card, SPFE E-mail, and use other brand image related docs. or activities under SPFE's Brand Name. Therefore, Agent is restricted from selling any other height adjustable frame solutions other than SPFE's. Agent has to follow SPFE Scandinavia Inc.'s operation models and policies.

**4. AGENT'S BEST EFFORTS**

Agent agrees to devote required time to meet and or exceed sales targets and best efforts to the business of Principal in the described territory under the direction of Principal's officers or representatives, and to conform to the best of Agent's ability with the rules, regulations and instructions of Principal now in force or that may be adopted and mailed to Agent's address.

**5. NONDISCLOSURE OF PRINCIPAL'S AFFAIRS**

Agent agrees to keep confidential such information as Principal may from time to time impart to Agent regarding Principal's business affairs and customers. Agent will not, in whole or in part, now or at any time, disclose such

information.

Principal agrees to hold Agents harmless of any product liability claims or lawsuits from all incidents surrounding and arising from product defect and or failure.

## 6. ASSIGNMENT OF AGENT'S INVENTIONS

Agent agrees, in view of the confidential information regarding Principal's business affairs, plans and necessities, that Agent will be in a position to obtain from time to time, and in partial consideration of the commissions agreed to be paid to Agent under this agreement, that Agent, on demand, will assign to Principal, or Principal's successors or assigns, any inventions or improvements Agent may make during the agency with Principal that relate to Principal's product. Agent also will sign any papers and do any acts that may be needed to secure to Principal, or Principal's successors or assigns, any rights relating to such inventions and improvements, including patents in North, Central and South America and foreign countries.

## 7. COMMISSIONS

a. Agent, during the term of the agreement, shall receive a commission from the sale of Principal's products including Enwork being the first account. Empire Series product sold to Enwork and any new customers brought on from July 1, 2016 on are commissionable. The sales of Principal's Universal Series products sold to ERGO's are non commissionable.

b. Principal agrees to pay Agent a commission of 5% on all orders based on new business from the Territory (Including Enwork) and based upon SPFE's Price list in 2016 up to a maximum of 35% discount (Enwork price level and volume – estimated to 20.000 units) for a period of 3 years. Renewable and convertible if agreed upon metrics met (TBD).

c. Commissions are calculated on the net invoice amounts actually received by Principal from purchasers in the Territory in payment of orders for products. For the purposes hereof, "net invoice amounts" shall be defined as the gross invoice value of orders, less deductions for sales taxes, cost of insurance, cost of freight and other transportation charges, and any allowance or discounts granted to customers.

## 8. WHEN COMMISSIONS ARE PAID

a. All commissions due to Agent hereunder shall be payable on 15th day of each month until the purchaser has made settlement in full with Principal, either by cash or acceptable notes. Or else the commission shall not be credited to Agent's account on Principal's books. If settlement is made wholly or in part by purchaser's notes, Principal may withhold payment of the commission in whole or in part until the notes are paid.

b. Notwithstanding anything herein to the contrary, the Agent shall not be entitled to commissions on Principal Products:

(i) That are returned to Principal;

(ii) For which the account receivable is written off as a bad debt by Principal's credit department because the purchaser is insolvent or bankrupt, is winding-up its business or has made a general assignment for the benefit of its creditors or any other similar situation where the account receivable in question is uncollectible in the opinion of Principal; or

(iii) For which commission should be payable in full as long as Principal is paid within 60 days of the due date of the invoice, unless special terms are granted (like Enwork.) In general, will no customers gets 60 days in payment terms, unless in really special situations.

The amount of commissions paid to the Sales Agent with respect to Company Products for which the Sales Agent is not entitled to commissions, as provided for in Article 8.b (i), (ii) and (iii), shall be deducted directly from any

MP

future commissions payable to the Sales Agent.

c. When Principal repossesses a product, Agent shall receive commission only on the amount of money paid by purchaser prior to repossession.

**9. COMMISSIONS ON TRADE-INS**

Principal shall have the right to fix the amount to be allowed for products taken in exchange, and a commission will not be paid on the amount so allowed.

**10. DISPUTES ON COMMISSIONS**

For sales made out of North, Central and South America, the Principal shall have the right to determine, in any dispute arising between Agent and any other sales Agent of Principal, the right to commission on any sale, and Agent shall abide by and be bound by Principal's decision. See 7B.

**11. LIMITATION ON COMMISSION CLAIMS**

Agent waives all claim for commission on sales of Principal's product, whether made by Agent or others, and all other claims of any nature whatsoever, if the claim is not made within 2 MONTHS from the date of termination of this agreement.

**12. CONTENTS OF ORDERS**

a. All orders for Principal's product shall be taken on printed forms furnished by Principal, and all such orders shall be sent to Principal immediately after being signed by purchasers. The orders shall contain all conditions and agreements of every nature whatsoever between the parties to the sale, it being agreed that Principal shall not be responsible for promises or conditions not specified on the orders

b. If Principal is compelled to make any concessions to customers or incur any expense by reason of a violation of these requirements, the amount of the expense may be charged to Agent's account.

**13. Agent's Sales Target and Corresponding Commission**

a. The Agent shall meet the following sales targets (calculated by payment paid by purchasers and received by Principal) including the first customer retained – Enwork. Sales can be generated by either growing accounts developed from the addition of Enwork on as well as bringing on new accounts.

| Year | - | Sales Target |
|---|---|---|
| • Year 2016 | - | USD 1.5 Million |
| • Year 2017 | - | USD 6.0 Million |
| • Year 2018 | - | USD 11 Million |
| • Year 2019 | - | USD 15 Million |
| • Year 2020 | - | USD 19 Million |

b. This Agreement is valid for a 3 years' period. If Agent fulfilled the sales target with more than 90% annually, this Agreement will roll for another 3 years' period.

c. Generally, Principal's product shall not be sold for more than the 35% discount of the list price in 2016 established by Principal. Agent may offer a higher discount to a new customer, then Principal and Agent may

MQ

share the discount. E.g. If Agent offer 2% more discount to a new customer, then Agent bear 1% and Principal bear 1%. Discount higher than 35% have to be approved by Principal in advance.

**14. ACCEPTANCE OF ORDERS BY PRINCIPAL**

Orders taken by Agent shall not be binding until accepted by Principal. Principal reserves the right to reject any order for any reason it chooses.

**15. AGENT NOT TO COMPETE**

Agent shall not purchase or deal in any other height adjustable frame solutions products on Agent's own account or other related account opened by Agent founder or partner in any way during the continuance of this agreement.

If Agent will sell other products to a new or existing customer of SPFE, Agent must always inform Principal's Managing Director John D Baker and get his confirmation if it is ok or not ok. If this is a new product, Principal must always have the first right to decide if it is something that Principal will take into the program or even produce it.

**16. REPAIRS AND MAINTENANCE OF PRODUCT**

Repairs on Principals product in Agents territory is the sole responsibility of the Principals Managing Director John D Baker. If Agent is available to assist, he will do so.

**17. COMPROMISE AND COLLECTION OF ACCOUNTS**

a. Principal shall have full control of and discretion as to the collection, adjustment or compromise of any or all accounts for Principal's products sold by Agent. If Principal Requests Agent to make any collection, or to obtain possession of Principal's product or other property, whether the request relates to a sale made by Agent or any Agent that preceded Agent in the territory, Agent shall do so promptly.

b. Principal shall determine whether to take a lien on Principal's product sold by Agent. Principal shall not be liable to Agent for any loss of commission or other claim, by reason of failure to take such lien, or by reason of any compromise or adjustment of any account or accounts or notes for products sold by Agent, or any failure for any reason to collect any part of the account or notes.

**18. REMITTALS BY AGENT**

Agent agrees to remit daily/weekly to Principal, in the manner prescribed by the treasurer, of Principal or to deposit daily/weekly in a bank or other financial institution designated by Principal's treasurer, all money, checks and drafts received by Agent for Principal, including any received for repair parts and supplies sold. In no event will Agent use any money collected for Principal to defray the expenses of the agency, or for any other purpose or deposit the funds in any bank or other financial institution to Agent's own credit.

**19. AGENT'S EXPENSES**

Agent is liable of the following expenses:

- Partner Lea G Plummer
- Medical insurance
- Personal income tax
- Corporate income tax
- Office facilities
- Office equipment
- Office supplies

lp

- IT & IT services
- Showroom facilities
- Sample stock facilities
- Samples of products will be provided at no cost to Agent for the purpose of sales activities
- Travel, hotel, air fare, car rental etc.
- Related expenses (meals, air fare, accommodations, transportation, car rental, etc.) will be covered by Principal for the following:
  - All costs associated on behalf of SPFE as a mission will be the responsibility of SPFE, and be paid by SPFE. (Product development, etc.)
- Samples price-list deducted 35% offered to current customers.
- Shipping (samples) paid for by customer.

**20. Principal's Expenses**

Principal is liable for the following activities and related expenses:

- Finance
- Customer service – both in US and in China.
- Technical support
- Key account management
- Logistics including freight costs
- Samples and freight for sales efforts are covered by Principal.
- Marketing materials such as Web-site, E-mail accounts, brochures, name cards, price-list etc.
- Warehouse space.
- Inventory owned by Principal, including spare parts
- Inventory handling fees IN/OUT.
- Product Liability coverage

**21. OBJECTIONS TO ACCOUNTING; LIMITATIONS**

Agent agrees that all objections to statements of account rendered by Principal are waived, unless written notice is given by Agent and unless such notice reaches Principal within 30 days after rendition of the statement by Principal.

**22. DISPOSITION OF PRODUCTS; CONSIGNMENT**

a. Agent agrees, on demand, to account for and deliver to Principal, in good condition, all products charged to Agent's consignment account. If Agent fails to deliver any product, the product may be charged to Agent's account at list price, if Principal so elects, but nothing contained in this agreement shall prevent Principal from exercising other legal remedies to recover possession of such products.

b. In the event any of Principal's products shall have been kept on consignment by Agent for such period of time that they have become unsaleable as new, Principal may order their return to the managing directors US warehouse, in which event the freight charges from Agent's office to the managing directors US warehouse shall be paid by Agent.

**23. INSURANCE PREMIUMS;**

Principal is only responsible for the product liability insurance.

**24. CUSTOMER LIST; SALES CALLS**

a. Agent agrees to target medium and large sized OEM office Furniture manufacturing companies as

customers. Agent will not be targeting the following companies in the United States of America by Principal: HAT, ISE Workrite, AMQ, Symmetry, Special T, Nevins and OFS.

b. Agent agrees to keep a list of probable purchasers, of Principal's products in Agent's territory. The lists shall show the name, nature and address of each business concern listed. The list shall also show the style and factory number of Principal's product in use.

c. All sales leads from the territory including leads generated by the Managing Director must be immediately turned over to the Agents to pursue. Refer to 7C.

**25. PURCHASE OF AGENCY PROPERTY**

Principal shall have an option of purchase of all or any part of the supplies, repair parts, vehicles and sundries in stock or on hand at the time of termination of the agency, at the current price, less proper deductions for obsolescence and depreciation, if any. Such price shall be paid to Agent or credited on Agent's account with Principal, as Principal may elect.

**26. EMPLOYMENT OF AGENT**

This is an integrated commercial operation model, where Mark Denham and Lea G. Plummer etc., operates under SPFE Scandinavia Inc. which means that Mark Denham will be the company's Sales Director and Lea "Sales Manager", for the sales director etc. John D Baker will be in charge of SPFE Scandinavia Inc. as Managing Director and to whom Agent reports to. Therefore, is it important to understand that Agent, in this model is an invoice company to whom SPFE pays the commission – but in all others matters are it under the SPFE brand.

**27. RESPONSIBILITY OF AGENT**

Agent has to focus on obtaining new customers instead of working with Principal's existing customers prior to the addition of Enwork. After Agent get the new customers into business and everything is settled, then SPFE Scandinavia Inc. should control those new customers and take over the administration. If there is interest, Agent still can maintain the customers on sales level to secure those customers reach their target but always in cooperation with SPFE Scandinavia Inc. Managing Director John D Baker. Then Agent will continue work for hunting new business. Agent and SPFE Scandinavia Inc. Managing Director John D Baker will hold the status meetings.

**28. REPORT OF AGENT**

Agent should report their activities and the market situation to SPFE Scandinavia Inc. Managing Director John D Baker monthly.

**29. TERMINATION**

a: If Agent breach any terms or don't reach the sales target stated in the Agreement, then Principal can terminate the Agreement immediately and pay no commission. Before any agreement can be terminated will the agent get a notice from the Principal, and get 3 month to bring it back to the conditions, stated in the contract.

b: If principal breach any terms stated in this agreement, then can the Agent terminate this agreement and get paid 12-month commission. Before any agreement can be terminated will the Principal get a notice from the Agent, and get 3 month to bring it back to the conditions, stated in the contract

c: The Principal can terminate the agreement immediately and pay 12 month commissions as compensation under following circumstances:

MP

1. Major changes of the executive management of the Principal
2. Purchase of the majority of Principal's assets bought by a third party.
3. Acquisition of all assets of Principal bought by a third party.

**30. GOVERNING LAW**

The enforcement and interpretation of this agreement shall be governed by the laws of the State of California.

The parties have executed this agreement the date and year first above written.

| PRINCIPAL | AGENT |
|---|---|
| Authorized Signature | Authorized Signature |
| Lasse Goetler, CEO LASSE GOETLER CEO | MARK DENHAM, PRESIDENT |
| Print Name and Title | Print Name and Title |